IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

FRANK L PERRY,

      Petitioner,

v.                                                    CASE NO. 1:13-cv-111-MP-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by fling a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.   The Petition stems from Petitioner's Alachua County jury-trial conviction of attempted second degree murder, for which Petitioner is serving a 25-year sentence.   ECF No. 1.  The Respondent has filed a Response with relevant portions of the state-court record, ECF Nos. 17 & 18, as well as supplemental authority, ECF No. 24.  Petitioner has filed a reply, ECF No. 23, and a response to the supplemental authority, ECF No. 27.  Upon due consideration of the Petition, the Response, and the parties' memoranda, the undersigned recommends that the Petition be denied.[1]

_____

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## I. Background

Petitioner was charged by information with attempted first-degree

murder with a firearm.[2]   ECF No. 18, Exh. A.  The trial evidence that is

relevant to the Petition may be summarized as follows.  On the night of the

shooting, Petitioner was at the apartment of his girlfriend, Christine

Richardson, together with Kenneth Mavins, Billy Wright, and Leo Davis.

Billy Wright called Richardson's son, Taylor, who lived in a nearby

apartment, to join them.  Taylor Richardson testified that after arriving at

the apartment he saw Petitioner slap his mother in the face.  Taylor

Richardson shoved Petitioner up against a door.   Richardson was

unarmed.  Richardson then saw a gun in Petitioner's hand but did not see

where it came from.  Petitioner pointed the gun at Richardson and pulled

the trigger, shooting Richardson in the right side of the chest.  Richardson

also sustained a fractured humerus in his right arm.  Richardson ran out of

the apartment and was subsequently located and taken to the hospital.  On

cross-examination, Richardson testified that he was rolling a joint prior to

the altercation and that he smokes marijuana.  When ask if he had

_____

[2]An amended information added a charge of battery upon Christine
Richardson and possession of a firearm by a convicted felon.  ECF No. 18
Exh. B.  Petitioner was acquitted of the battery charge and the felon-in-
possession charge was *nolle prossed*.

anything to drink that night, he testified that he had only been in the house for ten minutes prior to the shooting.  ECF No. 18-1 at 38-53.

Kenneth Mavins testified that he heard Taylor Richardson say "don't push my momma," and saw Christine Richardson stumbling back. Petitioner was leaning back against the door and shot Taylor.  Petitioner then held the gun, moving left to right as though to say "stay back." Petitioner made no statement, but left and got in his car.  On cross-examination, Mavins testified that he believed Petitioner was holding the gun about waist high, but he does not know if the gun was in Petitioner's back or down in the front of his pants before he shot Taylor.  *Id*. at 56-80.

Leo Davis testified that he saw Petitioner hit Christine in the face with his fist.  Taylor Richardson then hit Petitioner, and Petitioner reached behind his back and pulled the gun from underneath his shirt.  He fired it one time.  Davis tried to "break it up" and Petitioner pointed the gun at him. Davis told Petitioner he needed to calm down.  Petitioner said nothing, but walked out the door, got in his car, and left.  *Id*. at 81-98.

Officer John Kemp testified that he responded to a "shots fired" dispatch call to Christine Richardson's apartment.  When he arrived, she was running around screaming, and not making any sense.  He made contact with Taylor Richardson on a nearby street corner.  When Kemp

went into the apartment he saw a spent shell casing on the floor.  He

secured the scene until the forensics team arrived.  He made contact with

Christine Richardson again, who had calmed down and kept saying that

someone had shot her baby.  The court overruled defense counsel's

hearsay objection to Kemp's testimony.  Kemp testified that Christine

identified the shooter as Petitioner, and she described his car and gave

them a partial license plate number.   Kemp issued a BOLO.  *Id*. at 106-15.

Petitioner was later arrested while driving down Williston Road.  *Id*. at 123-

26.

The state presented extensive additional law enforcement and

forensic evidence.  At the close of the state's case, Petitioner's counsel

moved for a judgment of acquittal as to the offense of attempted first-

degree murder, arguing that the state had not placed into evidence any

proof of premeditated design to cause the death of Taylor Richardson.

Counsel argued that there was no real argument and no ill will brewing

between Petitioner and Taylor Richardson.  The court denied the motion,

concluding that the facts in evidence would give the jury something to

deliberate regarding whether there was premeditation.  *Id*. at 173.

Petitioner testified on his own behalf, advancing his defense theory

that the shooting was accidental.  He testified that his gun was in

Christine's night stand, and when he got ready to leave the apartment he got the gun and then returned and sat at the kitchen table. He denied intentionally striking Christine, but testified that when he was leaving he reached out to grab her and his hand hit her shoulder and knocked her back a little bit and she fell over on the sofa. He testified that the gun was in his left hand, down at his side, in a holster. After Taylor hit him and Petitioner hit the wall, the gun went off. When asked on cross-examination why the gun had not been in a holster when it was recovered from his car, Petitioner testified that the gun would not fit beside the driver's seat in the holster so he removed it and threw the holster in the back seat. *Id*. at 184-97.

During the jury charge conference, the court reviewed the charges for lesser included offenses including attempted second-degree murder and attempted manslaughter. Counsel accepted the charges without objection, and they were read to the jury. *Id*. at 245-46, 248-51. The jury returned a verdict of guilty of attempted second degree murder, with special findings that Petitioner possessed a firearm, discharged a firearm, and caused the victim great bodily harm. *Id*. at 29-91.

The First DCA affirmed in a *per curiam* written opinion. *Perry v. State*, 927 So. 2d 228 (Fla. 1st DCA 2006). The Florida Supreme Court

denied review.  *Id*.  Exh.  L.

Petitioner filed a *pro se* motion and amended motions pursuant to Fla. R. Crim. P. 3.850.  *Id*. Exh. M, N, O, P.  The state court summarily denied relief without an evidentiary hearing.  *Id.* Exh. R.  The First DCA affirmed *per curiam* without a written decision.  *Id.* Exh. V.

Petitioner filed a petition alleging ineffective assistance of appellate counsel, raising three claims for relief.   *Id*. Exh. BB.  The First DCA denied the petition on the merits.  *Id*. Exh. EE.

On April 27, 2012, Petitioner filed a petition for writ of habeas corpus in the First DCA arguing that the court had prematurely issued its mandate ending his direct appeal before Petitioner's rehearing motion and notice to invoke discretionary review were concluded.  Petitioner asserted that his conviction and sentence did not become final until the Florida Supreme Court declined jurisdiction on September 18, 2009, and thus that the First DCA's decision in *Montgomery v. State*, 70 So. 3d 603 (Fla. 1ˢᵗ DCA February 12, 2009) was applicable to his case.  *Id*. Exh. HH.[3]  The First DCA denied the petition and denied rehearing.  *Id*. Exh. II, LL.

_____

[3]*Montgomery* held that the State is not required to prove intent to kill in order to establish the crime of manslaughter by act, and an instruction that imposes an intent-to-kill element constitutes fundamental trial error. The State is not required to prove intent to kill in order to establish the crime of manslaughter by act, and an instruction that imposes an intent-to-kill element constitutes fundamental trial error.  *Montgomery*, 70 So.3d 603 at 607.

On August 15, 2012, Petitioner filed a second motion for
postconviction relief asserting that a change in the law entitled him to relief
on three grounds.  First, Petitioner alleged that the trial court fundamentally
erred by convicting him of a lesser offense not charged in the information
(an act imminently dangerous to another evincing a depraved mind without
regard for human life).  Second, Petitioner alleged that the trial court
fundamentally erred when it charged in a single count two distinct offenses
(attempted murder and aggravated battery).  Third, Petitioner alleged that
the trial court fundamentally erred when it instructed the jury that attempted
second degree murder is a necessary lesser included offense of attempted
first degree murder.  *Id*. Exh. OO.  On August 24, 2012, the trial court
denied the motion as untimely.  *Id*. Exh. PP.   The First DCA affirmed *per
curiam* without written opinion.  *Id*. Exh. UU.

On December 19, 2012, Petitioner filed a petition for writ of habeas
corpus in the Alachua County Circuit Court asserting that he was entitled to
habeas corpus relief due to an erroneous ruling committed by the court
regarding the finality date of Petitioner's conviction.  *Id*. Exh. YY.  The trial
court entered an order directing the clerk of court to re-file the petition
under the original criminal case number as a motion for postconviction
relief.  *Id*. Exh. ZZ.  The trial court denied the motion as untimely.  *Id*. Exh.

AAA.  The First DCA affirmed, *per curiam*, without  written opinion.  *Id*.

Exh. CCC.

The instant federal habeas corpus petition, which Respondent

concedes is timely, followed.  Petitioner asserts ten claims for relief: (1)

ineffective assistance of trial counsel for failing to preserve a sixth

amendment confrontation clause claim with respect to the testimony of

Gainesville Police Officer John Kemp; (2) ineffective assistance of trial

counsel for failing to object to a *Giglio* violation regarding the victim's

testimony that he did not drink on the day of the shooting when medical

records show he tested positive for alcohol and marijuana; (3) ineffective

assistance of trial counsel for failing to file a post-trial motion to reverse the

conviction where the evidence was insufficient to establish the element of a

depraved mind; (4) violation of due process because the Public Defender's

office represented Petitioner and the victim in different criminal cases; (5)

ineffective assistance of trial counsel for failing to object when the

prosecutor misquoted Petitioner in closing argument by stating that

Petitioner did not act in self-defense; (6) ineffective assistance of trial

counsel for failing to object to the third prong of the excusable attempted

homicide instruction that is not applicable when a firearm is used during an

offense; (7) trial court error for including an "intent to kill the victim" element

when instructing the jury on attempted manslaughter by act as a lesser

included offense of attempted first degree murder; (8) violation of due process for allowing the jury to convict Petitioner of a lesser included offense (attempted second degree murder) that was not charged in the charging information; (9) violation of due process for instructing the jury on the lesser included offense when there was no allegation in the charging information of a "depraved mind act, without regard for human life;" and (10) violation of due process for charging two separate offenses (attempted murder and battery) in a single count in the charging information, where the verdict was a general verdict not specifying which of the offenses the jury based its verdict on.  ECF No. 1.

## II. <u>Section 2254 Exhaustion Requirement</u>

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its

prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)
(quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state
court, and it is obvious that the unexhausted claim would now be
procedurally barred under state law, the claim is procedurally defaulted.
*Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas
courts are precluded from reviewing the merits of procedurally
defaulted claims unless the petitioner can show either (1) cause for the
failure to properly present the claim and actual prejudice from the default,
or (2) that a fundamental miscarriage of justice would result if the claim
were not considered.  *Id*. at 1302, 1306.  A fundamental miscarriage of
justice exists "where a constitutional violation has probably resulted in the
conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144,
1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a
petitioner must present new reliable evidence that was not presented at
trial showing that "it is more likely than not that no reasonable juror would
have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*,
513 U.S. 298, 324 (1995).

### III.  Section 2254 Standard of Review

For claims that are properly exhausted, the Anti-Terrorism and
Effective Death Penalty Act (AEDPA) imposes further limitations on the

scope of this Court's review.   Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."   "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* ___ U.S. ___,  2013 WL 5904117, *4 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of

federal rights." *Id*.   This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[4]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).   "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786).   "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief

---

[4]*Strickland v. Washington*, 466 U.S. 668, 686 (1984).

is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc).  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id*.

## IV.  Discussion

### A.  Ground One: Ineffective Assistance – Confrontation Clause

Petitioner contends that his trial counsel was ineffective for failing to pursue a confrontation clause claim for appellate review regarding Officer John Kemp's testimony that Christine Richardson identified Petitioner as the person who shot Taylor Richardson.  ECF No. 1.  In rejecting this claim

on postconviction review, the state court found that even if counsel failed to properly object on confrontation clause grounds (in addition to hearsay grounds), the error did not prejudice Petitioner because it was undisputed that Petitioner shot the victim.  ECF No. 18-2 at 62.   For the same reason, on federal habeas review, Petitioner's argument lacks any merit.  He did not dispute at trial that he was the person who shot the victim.

In his reply to the Respondent's response Petitioner suggests, without elaboration, that defense counsel needed to cross-examine Christine for other reasons apart from her identification of Petitioner as the shooter.  ECF No. 23 at 4.  In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).  Here, even assuming, *arguendo*, that trial counsel was deficient for failing to preserve a confrontation clause objection regarding Christine Richardson's statements, Petitioner has failed to point to facts that show that but for trial counsel's failure the result of the proceeding would have been different.

The undersigned therefore concludes that Petitioner has failed to

show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Burt,* 134 U.S. at 15.

## B.  Ground Two: Ineffective Assistance Regarding Giglio Violation

Petitioner argues that counsel was ineffective for failing to object to an alleged *Giglio*[5] violation because Taylor Richardson testified that he did not drink on the day of the shooting but his medical records showed positive results for marijuana and alcohol.  Petitioner contends that the State knew that Richardson was lying, and the jury would have found his testimony less credible had they known.  ECF No. 1.

A *Giglio* violation "occurs where the undisclosed evidence reveals that the prosecution knowingly made false statements or introduced or allowed trial testimony that it knew or should have known was false." *Smith v. Sec'y, Dep't of Corrections*, 572 F.3d 1327, 1333 (11th Cir. 2009) (citing *United States v. Agurs*, 427 U.S. 97, 103–04 (1976); *Giglio*, 405 U.S. at 153; *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995)). "To prevail on a *Giglio* claim, a petitioner must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material."

---

[5] *Giglio v. United States*, 405 U.S. 150 (1972).

*Id.* at 1334 (quoting *Ford v. Hall*, 546 F.3d 1326, 1331–32 (11th Cir. 2008)).

In his state postconviction motion, Petitioner argued that Taylor Richardson's medical records showed that his blood alcohol level was ".09".  The state court pointed out that Petitioner had misread the records and what Petitioner claimed was a ".09" was actually an ampersand.  ECF No. 18-2 at 63.  Further, the medical records were introduced at trial.  *Id.* There was no basis for counsel to impeach Richardson with his blood alcohol level as Petitioner argued.  *Id.*   With regard to marijuana use, Petitioner admitted, during defense counsel's cross-examination in his trial testimony that he was rolling a joint immediately prior to the altercation and that he used marijuana.  *See* ECF No. 18-1 at 38-53.

Petitioner's claim is not based on "undisclosed evidence" – the evidence at issue, the victim's medical records, were a trial exhibit.  *See* ECF No. 18-2 at 137-93, 18-3 at 1-22.

Moreover, as the state court found, defense counsel did explore the victim's drug and alcohol use on cross-examination.  Counsel elicited testimony that the victim used marijuana and was in the act of rolling a joint immediately before the shooting.  Counsel asked the victim if he had been drinking before the shooting, and the victim responded that he had only

been in the apartment for ten minutes and "hadn't did nothing."  Even if the

victim had consumed alcohol prior to arriving at the apartment, Petitioner

has made no showing that any further inquiry by counsel regarding that

point would have had any possible outcome on the proceeding, in view of

the fact that the victim had already admitted to drug use on counsel's

questioning.  On this record, the undersigned concludes that Petitioner has

failed to show that the state court's rejection of this ineffective-assistance

claim was "so lacking in justification that there was an error . . . beyond any

possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

## C.  *Ground Three: Counsel's Failure to File Motion for Acquittal*

Petitioner alleges that his counsel should have filed a post-trial

motion for a judgment of acquittal on the grounds that the evidence was

insufficient to find the essential element of attempted second degree

murder that Petitioner acted with a depraved mind.  ECF No. 1.  The state

court rejected his claim on postconviction review because it found that

Petitioner was essentially challenging the sufficiency of the evidence, and

sufficiency of the evidence cannot be challenged by way of a Rule 3.850

motion.  ECF No. 18-2.

Petitioner reiterates in his reply brief that he is not challenging the

sufficiency of the evidence.  Rather, he asserts that counsel should have

argued in his *closing argument* that "as a matter of law" the evidence only supported a possible conviction for attempted manslaughter.    ECF No. 23 at 10.

As Respondent contends, Petitioner's claim lacks factual support in the record.  As summarized above, at the close of the state's case-in-chief, Petitioner's trial counsel did move for a judgment of acquittal on the grounds of sufficiency of the evidence, and specifically argued that there was no evidence that Petitioner acted with ill will.  Counsel renewed his motion at the close of all of the evidence, arguing that there was conflicting evidence regarding how the shooting occurred such as the angle of the gun, what statements were made, and whether the witnesses were impaired.   ECF No. 18-1 at 173, 200.    Because the trial court found the evidence sufficient to go to the jury on the attempted first-degree murder charge, a motion for judgment of acquittal on a lesser included offense plainly would have been unsuccessful.  *See id*.

To the extent that Petitioner argues that counsel erred in his closing arguments, it does not appear he made this same argument before the postconviction court.  *See* ECF No. 18-2 at 60-68.  Therefore, this specific argument appears to be unexhausted, procedurally defaulted, and foreclosed from federal habeas corpus review.  Further, the trial record

reflects that in closing argument counsel vigorously pursued a consistent trial strategy reflected throughout the proceeding and supported by Petitioner's own testimony – that the shooting was the result of an accident.  ECF No. 18-1 at 211-43.  Moreover, while Petitioner maintains that he is not challenging the sufficiency of the evidence in his case, he cannot claim that counsel was ineffective for failing to file post-trial motion for judgment of acquittal without pointing to something in the record showing that there was a factual basis for filing such a motion.  On this record, Petitioner's claim lacks any factual support.

In sum, Petitioner has failed to show either that counsel's performance was deficient under *Strickland* or that he was prejudiced by counsel's performance.  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### D.  Ground Four: Alleged Conflict of Interest

Petitioner alleges that his trial counsel had an alleged conflict of interest because a different attorney from the Public Defender's office was representing Taylor Richardson in a different criminal case.  ECF No. 1. The state court rejected this claim on postconviction review because Petitioner failed to establish the existence of any actual conflict of interest.

In *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), the Court held that if

a defendant establishes (1) "that his counsel actively represented conflicting interests" and (2) that the conflict "adversely affected his lawyer's performance," then a defendant is presumed to be prejudiced. *Sullivan*, 446 U.S. at 350.  However, *Sullivan* only encompasses an attorney conflict of interest stemming from the concurrent joint representation of criminal defendants.  *See Schwab v. Crosby*, 451 F.3d 1308, 1322 (11th Cir. 2006).  Other conflict of interest claims are reviewed under the *Strickland* standard, which requires a habeas petitioner to demonstrate actual prejudice from the alleged conflict of interest.

Here, there was no concurrent joint representation of criminal defendants by Petitioner's counsel.  Assessing Petitioner's claim under the *Strickland* standard, Petitioner points to nothing in the record that suggests the representation of the victim by a different public defender in a different case amounted to prejudice under *Strickland*.   Petitioner has failed to show that there is a reasonable probability that the result of the proceeding would have been different.  On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Burt,* 134 U.S. at 15.

### E.  Ground Five: Failure to Correct Misquote in Closing Argument

Petitioner contends that trial counsel was ineffective for failing to object when the prosecutor misquoted him in closing argument by stating that Petitioner did not act in self-defense.  ECF No. 1.

This claim is based on the state's question in cross-examination when Petitioner was asked "You're not claiming that you acted in self-defense, correct?  You're not claiming the gun went off because you were trying to defend yourself, correct?"  Petitioner responded: "No, no."  ECF No. 18-1 at 199.  In closing argument, the prosecutor stated: "He's admitted to you this is not self-defense."  *Id*. at 223.  Petitioner now asserts that his responses to the questions were disagreements with the underlying assumptions, and that his defense counsel should have objected to the prosecutor's closing argument stating that Petitioner "admitted" it was not self-defense.  ECF No. 1.

In rejecting this claim on postconviction review, the state court found that the questions and the closing argument were proper, and that counsel did not err by failing to object.  ECF No. 18-2 at 64.  In light of the record, Petitioner's claim in this court lacks any basis in fact or logic.  As noted above, the defense theory was that the shooting was an accident.  At no point during the presentation of the case did counsel present a theory of

self-defense, nor does Petitioner's testimony, in the context of the record, suggest that he intended to assert that he acted in self-defense. His testimony was that the shooting was an accident: "It was . . . it was just an unfortunate accident. I never had any intentions of hurting anybody. I wasn't trying – I wasn't mad at anybody. Wasn't anybody upset with me. It was just an accident." ECF No. 18-1 at 193. In closing argument, in response to the prosecutor's argument, Petitioner's counsel reiterated that "Mr. Perry is just simply not guilty. This was an accident. It was unfortunate. Mr. Perry is sorry it happened. But sometimes these things happen." ECF No. 18-1 at 243. There was simply no basis, on this record, for counsel to object to the prosecutor's logical assertion, based on the evidence, that Petitioner admitted he did not act in self-defense.

Accordingly, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### Ground Six: Ineffective Assistance Regarding Jury Instruction

Petitioner contends that his counsel was ineffective for failing to object to the trial court's inclusion of the third prong of the excusable attempted homicide instruction that is inapplicable when a firearm is used.

ECF No. 1.  Following the standard instruction, the trial court instructed the

jury that the attempted killing of a human being is excusable and therefor

lawful if:

> One, when the attempted killing is committed by accident and
> misfortune, in doing any lawful act by lawful means with usual,
> ordinary caution and without any unlawful intent; or when the
> attempted killing occurs by accident and misfortune, in the heat
> of passion, upon any sudden and sufficient provocation; or
> when the attempted killing is committed by accident and
> misfortune resulting from a sudden combat, if a dangerous
> weapon is not used and the attempted killing is not done in a
> cruel or unusual manner.

ECF No. 18-1 at 257; *see* Florida Standard Criminal Jury Instruction 7.1

(Introduction, Excusable Homicide).

Petitioner argues that by including the third circumstance, which is

inapplicable because a dangerous weapon was used, the jury could have

believed that the defense of excusable attempted homicide was

unavailable to him.  ECF No. 1; 23.  In rejecting this claim on

postconviction review, the state court found that Petitioner failed to support

the claim with case law, noting that failure to object to a standard jury

instruction that has not been invalidated by the Florida Supreme Court is

not ineffective assistance.  ECF No. 18-2 at 65.

Florida courts have held that when the full excusable homicide

instruction is read, it is clear that the third circumstance excluding

dangerous weapons from the defense only applies to situations involving sudden combat. *Hammonds v. State*, 548 So.2d 909, 912 (Fla. 1st DCA 1989) (standard instruction on excusable homicide "would not mislead the jury into believing that a killing can never be excusable if committed with a dangerous weapon" because it is clear that the third part only applies to situations involving sudden combat) (citing *Young v. State*, 509 So.2d 1339 (Fla. 1st DCA 1987), and *Blitch v. State*, 427 So.2d 785 (Fla. 2d DCA 1983)).  Thus, on this record, counsel was not ineffective for not objecting to the standard jury instruction which clearly allowed the jury to find that the shooting was excusable based on Petitioner's defense theory that it was an accident.

Accordingly, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

### Ground Seven: Trial Court Error in Manslaughter Instruction

Petitioner argues that the trial court committed "plain error" when it instructed the jury on attempted manslaughter.  ECF No. 1.  The challenged manslaughter instruction included as an element that the state had to prove that Petitioner committed an act "intended to cause the death

of Taylor Richardson."  ECF No. 18-1 at 259-60.  In *Montgomery v. State*, 70 So. 3d 603, 607 (Fla. 1st DCA February 12, 2009), the First DCA held that the State is not required to prove intent to kill in order to establish the crime of manslaughter by act, and an instruction that imposes an intent-to-kill element constitutes fundamental trial error under state law.  In rejecting this claim on postconviction review, the state court found that the cases holding that the instruction was fundamentally erroneous were entered subsequent to the affirmance of Petitioner's conviction and were not retroactively applicable to his case.  ECF No. 18-2 at 68.

After filing the Response, the Respondent provided the Court with supplemental authority that controls the resolution of this issue.  In *Joseph v. Sec'y, Dept. of Corr.*, 567 Fed. Appx. 893, * 894, 2014 WL 2259940 (11th Cir. 2014), the Eleventh Circuit held that an identical claim based on *Montgomery* did not allege a federal constitutional claim but rather, as in this case, alleged that the trial court erred as a matter of state law.  In his supplemental reply, Petitioner alleges that the state court denied him equal protection under the U.S. constitution on postconviction review by not applying the holding in *Montgomery* retroactively to his case.  ECF No. 27. Petitioner's argument amounts to an attempt to turn his state-law claim under *Montgomery*, as the Eleventh Circuit held in *Joseph*, into a federal

claim.  But asserted constitutional errors in postconviction proceedings are

not cognizable on federal habeas corpus review.  *See Spradley v. Dugger*,

825 F.2d 1566, 1568 (11th Cir. 1987) (habeas petitioner's claim that errors

in Rule 3.850 proceeding violated his right to due process did not state a

basis for habeas relief because the claim "went to issues unrelated to the

cause of petitioner's detention.").  The court therefore concludes that

Petitioner has failed to state a cognizable federal habeas corpus claim

based upon *Montgomery.   See Joseph,* 567 Fed. Appx. *894.

### Grounds Eight, Nine, and Ten: Procedural Default

Petitioner alleges in his eighth claim that his right to due process was

violated when he was convicted of a crime, attempted second degree

murder, that was not charged in the charging information when intervening

state cases have held that second degree murder is not necessarily a

lesser included offense of first degree murder.  In his ninth claim, Petitioner

alleges that it was fundamental error for the trial court to instruct the jury on

attempted second degree murder as a lesser-included offense of

attempted first-degree murder.  In his tenth claim, Petitioner alleges that

the trial court prejudiced the defense by charging two separate offenses,

attempted first degree murder and battery, in a single count of the charging

information.  ECF No. 1.

Respondent contends that these three claims are unexhausted and procedurally defaulted because Petitioner raised them in his second postconviction motion filed on August 15, 2012, which the state court dismissed as untimely.  ECF No. 17.   In his reply, Petitioner concedes that his second postconviction motion was time-barred, but argues that he can establish cause for the procedural default because of state-court delays in ruling on his other postconviction motions.  Petitioner argues that the state courts' erroneous postconviction rulings and "deliberate road blocks" violated his right to due process.  ECF No. 23 at 30-31.

The state court found that Petitioner's judgment and sentence became final for purposes of the Fla. R. Crim. P. 3.850 two-year limitations period on September 18, 2009, and that the motion filed on August 20, 2012, was therefore time-barred.  ECF NO. 18-4 at 76.  The court further found that Petitioner had failed to allege any ground that would meet an exception to the time limitation.  *Id*. at 76-77.  The court denied Petitioner's motion for rehearing, in which Petitioner argued that his claims reflected a "manifest injustice" in his conviction.  *Id*. at 79-84, 87.  The First DCA affirmed the trial court's procedural ruling, without opinion.  *Id*. at 104.

 "Federal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law."  *Tower v. Phillips*,

7 F.3d 206, (11th Cir. 1993) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)).  There are two exceptions to the procedural default bar. The first is the "cause and prejudice" exception; the second, which is a narrow one, is the "actual innocence" exception, also known as the "fundamental miscarriage of justice" exception, used in extraordinary circumstances. *See Johnson v. Singletary*, 938 F.2d 1166, 1174–75 (11th Cir.1991).

Petitioner alleges cause in the form of state-court delays in ruling on his other postconviction motions, erroneous postconviction rulings, and "deliberate road blocks."  ECF No. 23 at 30-31.  However, it does not appear that he asserted these arguments as grounds to overcome the state limitations bar in his untimely postconviction motion, and therefore these arguments are also unexhausted.  *See* ECF No. 18-4 at 49-66, 79-84.  Moreover, Petitioner essentially asks this court to second-guess the state court's determination of the timeliness of his postconviction motion under state law.  As a matter of comity, this court defers to the state court's determination as to the timeliness of a postconviction motion under Fla. R. Crim. P. 3.850.  *Webster v. Moore*, 199 F.3rd 1256, 1257 (11th Cir. 2000).

The undersigned therefore concludes that Petitioner has not shown cause sufficient to overcome the procedural default of claims eight, nine, and ten.  Petitioner has made no argument that he can satisfy the narrow

"actual innocence" exception to procedural default.  *See* ECF No. 23.

Accordingly, these claims are foreclosed from federal review.

### V.   <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)."  A timely notice of appeal must still be filed, even if the court

issues a certificate of appealability. Rule 11(b), Rules Governing Section

2254 Cases.

The undersigned finds no substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000). Therefore, the undersigned recommends that the

district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court

may direct the parties to submit arguments on whether a certificate should

issue."  Thus, if there is an objection to this recommendation by either

party, that party may bring this argument to the attention of the district

judge in the objections permitted to this report and recommendation.

## VI.  **Conclusion**

For the foregoing reasons, it is respectfully **RECOMMENDED** that

the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a

Person in State Custody, ECF No. 1, should be **DENIED** and that a COA

should be **DENIED.**

**IN CHAMBERS** this 9th day of August 2016.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**